# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 1:12CR00044 |
| | ) | |
| v. | ) | |
| | ) | |
| **DAVID CLINE,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:13CR00008 |
| | ) | |
| **ROSIE D. RITCHIE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States;, Benjamin L. Bailey, Christopher S. Morris, and Michael B. Hissam, Bailey & Glasser LLP, Charleston, West Virginia, for Defendants.*

The issue before the court is whether it should permit the dual representation by counsel of two criminal defendants who are charged as part of the same criminal scheme, where one of the defendants has pleaded guilty and will testify for the government at the trial of the other defendant. Before finally determining the issue, I will allow the parties the opportunity to further advise the court.

I

Defendant David Cline is charged with conspiracy and structuring relating to a so-called "ten-percent check cashing scheme." The government contends that the scheme, a purpose of which was to avoid payment of federal income taxes, involved mine equipment businesses selling to coal mining companies in Virginia and West Virginia. Over a period of time, the government alleges, these mine equipment businesses provided false invoices to certain mining companies. A mining company involved in the scheme would pay the invoice to the equipment company by check and in return the equipment company would deposit the check and return cash to the company, less ten percent as a fee. No actual sale of equipment would be involved, but the mining company would deduct the invoice amount as a business expense and pocket the cash and not report it on its income tax return. In addition, some of the mining companies used the cash to pay their

employees "off the books," so that they did not pay the required employment taxes and the employees did not report the income.

It is further alleged by the government that the equipment companies would "structure" their cash withdrawals in amounts of $10,000 or less, in order to avoid bank reporting requirements and that the mining companies aided and abetted this structuring.

Numerous individuals were allegedly involved in this scheme, and many have been charged. A number have already pleaded guilty and have agreed to cooperate with the government. Four defendants who have pleaded not guilty are charged in a single case which is set for trial. Those defendants are Cline, his son, Joshua Cline, William Adams, and John Ward. All were coal mine operators.

One of the participants in the scheme who has pleaded guilty and is awaiting sentencing is Rosie D. Ritchie. She worked for certain other mine operators as a bookkeeper. She knew J.D. McReynolds, a mine equipment seller who it is claimed was at the center of the scheme, and she facilitated her employers becoming involved. The government plans to call her as a witness in its case-in-chief at the upcoming trial of Cline and his codefendants. She does not know Cline (and he does not know her) and she cannot directly link him to the scheme, although the government will contend that her description of the scheme will match details of other evidence against Cline and thus support its case against him.

Both Cline and Ritchie are represented by lawyers from the same firm. Indeed, it has been represented that the lawyer who appeared for Ritchie at her guilty plea hearing may likely take the lead for Cline at his trial. The attorneys have advised the court that they do not contest Ritchie's expected testimony, although they will dispute its implications as to Cline. They say that they do not intend to attack Ritchie's credibility at Cline's trial. Their clients have both signed written waivers of any such potential conflict. In addition, I have questioned both defendants on the record and both stated that they understand the situation and agree to the dual representation. Their attorneys assure the court that if any matters come to their attention prior to trial that would require them to take positions adverse to either of the clients, they will promptly advise the court.

The government has expressed concern about this dual representation, pointing out, among other issues, that if it appears that Ritchie shaved her testimony in some way to help Cline, she may lose an opportunity to obtain a motion from the government for a lesser sentence based upon her substantial assistance in Cline's prosecution.

II

The court has broad discretion in deciding this issue, although opinions of the United States Court of Appeals for the Fourth Circuit appear to emphasize a

defendant's Sixth Amendment right to conflict-free counsel over the defendant's competing Sixth Amendment right to counsel of his or her choosing.  Additionally, numerous courts have found disqualification appropriate whenever defense counsel would be required to cross-examine his own client.

Virginia Rule of Professional Conduct 1.7 provides that, absent valid client consent, an attorney shall not represent a client if, inter alia, "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."  Va. Rules of Prof'l Conduct 1.7(a).[1] The client's informed, written consent to representation by the lawyer despite such a conflict is valid only if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client" and "the representation is not prohibited by law."  *Id.* 1.7(b).  Comment 23 to the rule states, "The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant.  On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of paragraph (b) are met."  *Id.* 1.7 cmt. 23.

---

[1] The Virginia professional responsibility rules constitute the applicable disciplinary rules of this court.  W.D. Va. Rules of Disciplinary Enforcement IV(B).  All attorneys, including those admitted pro hac vice, are subject to these rules.  W.D. Va. Gen. R. 6(h).

When lawyers are associated in a firm, such as here, "none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so [by Rule 1.7]." *Id.* 1.10(a). "Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client . . . ." *Id.* 1.10 cmt. 2.

In a criminal case, one attorney's representation of multiple defendants also implicates the Sixth Amendment. *See Wheat v. United States*, 486 U.S. 153, 158-60 (1988). The Federal Rules of Criminal Procedure require the court to "promptly inquire about the propriety of joint representation and . . . personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2).

The Supreme Court has held that district judges have broad discretion "in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. "The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but

by a showing of a serious potential for conflict." *Id.* at 164. Though the key facts in the *Wheat* case are not the same as those in the instant matter, there are important factual similarities. *Wheat* involved a complex drug distribution scheme. One attorney represented a defendant who had pleaded guilty and also sought to represent the petitioner, who had pleaded not guilty and intended to proceed to trial. The prosecution indicated that it would call the first defendant as a witness in the trial of the second defendant. The petitioner argued that even if the first defendant were called to testify, he "would simply say that he did not know petitioner and had no dealings with him; no attempt by [defense counsel] to impeach [the first defendant] would be necessary." *Id.* at 156. Additionally, as in the present case, both parties had agreed in writing to waive the conflict of interest. Nevertheless, the district judge refused to allow defense counsel to represent the petitioner at trial, and the Supreme Court upheld that decision.

The Fourth Circuit applied the *Wheat* rationale in *Hoffman v. Leeke*, 903 F.2d 280 (4th Cir. 1990), and found that defense counsel should have been prohibited from representing both the appellant-defendant and his codefendant who had pleaded guilty and testified against the appellant-defendant. The court noted that defense counsel had represented both defendants with respect to the murder-for-hire prosecution at the time the codefendant entered into his plea agreement. *Id.* at 286. Thus, "Hoffman was in the unacceptable position of having his own

attorney help the state procure a witness against him." *Id.* at 286. Though the court ultimately found that the appellant's waiver was invalid because it was not knowing and intelligent, *id.* at 288-89, the court indicated that "[n]ot even the proffer of admittedly valid waivers of conflict-free counsel can restrict a trial court's power to insist on separate representation," *id.* at 288. In a later case, citing *Hoffman*, the Fourth Circuit stated that it has "rigorously applied *Wheat*'s rationale — which emphasizes the primacy of the court's concern for integrity of the process." *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996).

Numerous courts in other jurisdictions have ordered or affirmed the disqualification of defense counsel from representing one or more codefendants where joint representation would require counsel to cross-examine counsel's own client. *See, e.g.*, *United States v. Pavlock*, No. 1:10CR07, 2010 WL 1404662, at *7-8 (N.D.W. Va. Feb. 19, 2010), *adopted by* 2010 WL 1404626 (N.D.W. Va. Apr. 1, 2010); *United States v. Cheatham*, No. 3:2006-29, 2008 WL 311029, at *4 (W.D. Pa. Feb. 1, 2008), *aff'd,* 404 F. App'x 681 (3d Cir. 2010) (unpublished); *United States v. Scott*, No. 2:05-CR-10-01-WCO, 2007 WL 2121644, at *1 (N.D. Ga. July 24, 2007); *United States v. Dively*, No. 3:07-02, 2007 WL 2008502, at *5 (W.D. Pa. July 5, 2007); *United States v. Winter*, No. 98-341, 1998 WL 669932, at *3 (E.D. Pa. Sept. 29, 1998); *United States v. Stewart*, No. 96-583, 1997 WL 611594, at *3 (E.D. Pa. Sept. 24, 1997), *aff'd,* 185 F.3d 112, 119-22 (3d Cir.

1999); *United States v. Culp*, 934 F. Supp. 394, 397-98 (M.D. Fla. 1996); *Kiker v. State*, 55 So. 3d 1060, 1067 (Miss. 2011); *State v. Tairi*, 2008 WL 2415196, at *5-7 (N.J. Super. Ct. App. Div. June 17, 2008) (unpublished); *People v. Doss*, Nos. 266375, 266830, 2007 WL 1094422, at *2 (Mich. Ct. App. Apr. 12, 2007) (unpublished); *State v. Cisco*, 861 So. 2d 118, 130 (La. 2003). Some courts have concluded that defense counsel would inevitably be materially limited in his cross-examination of the codefendant/witness due to his obligations to that client, and thus would be unable to provide fully effective counsel to the client on trial. Other courts have emphasized defense counsel's ethical duty of loyalty to all clients and have concluded that even where no vigorous impeachment is required, an attorney who cross-examines his own client gives the appearance of having split loyalties, which undermines the integrity of the process.

Nevertheless, at least two courts have found disqualification inappropriate where the codefendant/witness would testify only to background information, was not a key witness for the prosecution, would not directly implicate the defendant on trial, and where no client confidences could be used against the testifying codefendant. *United States v. Hawkins*, No. CRIM.A. 04-370-05, 2004 WL 2102017, at *6-8 (E.D. Pa. Aug. 26, 2004); *United States v. Mazzone*, No. CR. A. 99-0363-06, 2000 WL 1790115, at *2-3 (E.D. Pa. Dec. 7, 2000).

III

The defense attorneys here are experienced and competent litigators who have forthrightly recognized the potential conflict but believe that it does not affect their clients' interests. However, because of the serious nature of the issue, I believe that the parties ought to have an additional opportunity to submit their views. Accordingly, the defendants are hereby directed to show cause why the court should not require that they be represented by separate counsel. To do so, the defendants must file a response to this order within 14 days. The government must respond within 7 days of service of the defendants' response. The defendants may reply within 7 days of service of the government's response. If any party desires a hearing, the party must so advise the court promptly following the last filing.

It is so **ORDERED**.

ENTER: April 19, 2013

/s/ James P. Jones
United States District Judge